Good morning, Your Honors, and may it please the Court, my name is Mark Johnson, Deputy Attorney General from the California Attorney General's Office, appearing on behalf of Mr. Alameda, and I first ask that the Court indulge counsel a bit. As you can tell, my throat isn't really up to snuff today, and I'm hoping that you'll allow me to avail myself of my water during the course of the argument. Today we're addressing a habeas matter where the district court has issued an unconditional writ based on a finding that Mr. Brewster's state-appointed appellate attorney rendered constitutionally ineffective assistance for failure to raise on direct state appeal a claim regarding an alleged Fourth Amendment violation. The appellant's objection to that finding is twofold. Firstly, it's our position, and I believe the position has been well supported by district courts and other circuit courts all over, that this prejudice finding here, irrespective of whether state-appointed counsel, in fact, acted unreasonably for failure to raise this claim on direct appeal, Mr. Brewster could not have been prejudiced by this failing because the state courts did, in fact, address the merits of that claim, the Fourth Amendment claim, and found it to be without merit. Without merit or frivolous? The state courts found it to be without merit on state habeas review. It doesn't, on state habeas review. What happened on the direct appeal after the attorney filed the, and I'm not sure how the, is it Wendt or Wente? Wende. I pronounce it Wende brief. After that was filed and the state appellate court was basically told, okay, have at it on your own, what was the disposition? The disposition, well, if I can back up a little bit, in that particular context, the matter, although it was not briefed by appointed counsel, the matter was before the state appellate court. The petition or the certificate of appealability and notice of appeal set forth that the claim to be addressed on appeal was this Fourth Amendment claim. Additionally, appointed counsel did provide a statement of facts, and that statement of facts encompassed the entirety of the suppression motion here. It was clear to the panel, the state appellate court panel, that the issue, should it be brought here, would, could, and only really would be the, the sufficiency of the trial court's finding with regard to the suppression motion. The undertaking a review of the record by itself, the state appellate court found that there were no justiciable issues, and therefore affirmed the judgment. Let me back up a moment. Do you think that the Fourth Amendment question as to the propriety of the search of the lunchbox or the igloo was a frivolous issue? No. I think it was a debatable issue. In other words, a Wendy brief on that point was inappropriate. It may have been. No, if it's not frivolous, it may have been, it was. If it was, if it was ultimately without merit, then I think that saving judicial resources. No, I'm, that's not my question. The question is, is a Wendy brief inappropriate where there is an arguable issue? And the answer is, of course, it's inappropriate. So it may have been, it was. Are you with me or not? Do you want to, is there something wrong with that? I'm, it may be inappropriate, but I would argue that it doesn't rise in and of itself to the level of constitutionally ineffective assistance. That's a different question. Okay. Assuming that the Fourth Amendment question concerning the search of the igloo is an arguable question, what's the obligation of the California Court of Appeal upon seeing such an issue? Well, the obligation of the California Court of Appeal as to seeing any potentially justiciable issue is to, in the context of a Wendy brief, is to review the record and see if there's any basis for finding, for finding that relief is available. And further, if there's a non-frivolous issue, to order a briefing. Right. Which it did not do. Which it did not do. So that leads me to the conclusion that, you know, something was going on there in the Court of Appeal that, you know, they weren't looking at this very closely, because you don't have to look very closely to realize that it's an arguable issue. And maybe they were not looking very closely because they had a Wendy brief. Or perhaps they were, they did not order a further briefing because they had already determined that the issue would not prevail no matter what additional briefing. But that's an obligation, that's a violation of their obligation. That's to say they have an obligation under California law if it's an arguable issue to order a further briefing. And you're not accusing the California Court of Appeal of violating the law, are you? No, Your Honor. And they might have done it inadvertently, but I'd be very surprised if they did it on purpose. And I don't believe the California Court of Appeal would ask for further briefing on any issue. If the standard were non-frivolous, then it would basically place a burden on the California courts and on counsel to turn all appellate briefing into an endless exhaustive process. Isn't that the standard set by the U.S. Supreme Court in Smith v. Robbins? It very clearly distinguishes the line not as being meritorious, but rather as being frivolous. It says the reason that this procedure can be sustained is you've got both counsel and court looking to make sure that the only issues out there are issues which are not arguable. And they go on to use, Wente, by contrast, requires both counsel and the court to find the appeal to be lacking in arguable issues, which is to say frivolous. Because as we understand the California procedure, and the Supreme Court appeared to understand the California procedure, if the Court of Appeals discovers an issue that maybe doesn't look real good, but it's better than frivolous, then the procedure is supposed to be appoint counsel and have it argued. But they didn't do that. No, they did not in this case. So we have an issue which you can see appears to be at least arguable that wasn't found as such by either appellate counsel or the California Court of Appeal. Doesn't that give us some basis for concern? Not in this case, Your Honor. There's a line between every non-frivolous issue and an issue that deserves the special attention and redress provided by the State appellate courts. And, in fact, the ineffective assistance standard as applied to direct appeals very, very expressly makes clear that it's not the obligation of appointed counsel to raise every non-frivolous issue. In fact, good representatives of the State appellate courts have said that. But is it permissible for a counsel not to raise any issue to say there is no non-frivolous issue when, in fact, there is something? If counsel is persuaded that although the issue is perhaps maybe non-frivolous, it's nonetheless almost certainly or certainly going to be a loser, the alternative obligation of conserving judicial resources would counsel against wasting time in addressing an issue that's certainly going to lose. And the California Court of Appeal here cannot be said to have shrunk from its responsibility in this case. They clearly did review the record here. In fact, they reviewed the record so clearly as to find that some of the ordering regarding the fees imposed by the trial court here were erroneous. This is not a district court that blithely overlooked this case. However, even if that were the case here, even if that were the case, Mr. Brewster was not prejudiced because this issue was addressed on the merits more than once by the superior court, by the Court of Appeal, which had already reviewed the record, and by the California Supreme Court, and this precise Fourth Amendment issue. But you're flying in the face of the problem that we're trying to focus on, which is to say I have trouble deciding simultaneously that the California court focused clearly on this one, understood the issue, and denied it on the merits, and simultaneously violated its obligation to ask for briefing. Because you're asking me to say that both things are true. I'm asking you that it saw a non-frivolous issue, understood the non-frivolous issue, but nonetheless consciously decided not to follow its statutory obligation. I don't think that's a very likely or very flattering description of the California Court of Appeal. The California Court of Appeal and all the California courts did review the merits of this claim, Your Honor. In fact, they did so repeatedly. But you're not responding to my question. They might have reviewed it, but unless they didn't understand that it was an arguable issue, they deliberately violated the California law. And I'm just unwilling to believe that a California court would do that. That's my understanding as well. The California court did not violate the law here. Well, it did not consciously or deliberately do so. They might have inadvertently. That's to say it might have been a non-frivolous issue, but they didn't understand it as non-frivolous. I'm not prepared to comment on what the procedures of the California courts of appeals position is with respect to reviewing all arguable non-frivolous issues in Wendy briefs. It does appear here, however, that the Court did review this record at the direct appeal stage and repeatedly on habeas review, did consider the merits. The merits of this claim were set before the California courts. They were set forth very thoroughly by Mr. Brewster himself. The California courts did review the merits of those claims, that claim, and found it to be without merit. Therefore, even if counsel had specifically raised this claim on direct appeal, it would not have succeeded. At the very least, there's — it's not reasonably likely it would have succeeded, given the fact that the claim was repeatedly addressed and rejected on state habeas review, where the standard is virtually identical. In fact, in some ways, the standard for obtaining state habeas relief is more lenient than on direct appeal. In what relevant respect is it more lenient? Well, as an initial matter, it is. In both senses, there is a presumption that the underlying judgment is correct, and the Petitioner or Appellant, whatever the case may be, has the burden of overcoming that presumption. However — No, that can't be right. It's a straightforward — unless there's some disagreement as to fact, which it does not appear there was, it's a straightforward question of law. Right. Well, that's — and if there is some factual disagreement, then — I don't think there was one. Right. As an initial matter on state habeas review, whatever facts are submitted are presumed correct, and to progress to an order to show cause or evidentiary hearing or further inquiry into the matter, the submitted materials and the facts need only state of prima facie basis for relief. So that threshold finding is actually lesser. As a practical matter, though, the standards are the same. And so the state court's adjudication of resolution of this Fourth Amendment claim on the merits on state habeas review disposed of the matter. Counsel could — Now, this is kind of a tricky case in that, of course, if the California Court of Appeal had addressed the merits of it, and we were being asked to review the merits of the California Court of Appeal decision as to the Fourth Amendment claim, it's out of court. That is to say, under Stone v. Powell, we don't get to address it, period. That's correct. So the only thing we get to do is, assuming we find violation of Sixth Amendment, that is to say, assuming we find ineffective assistance of counsel, is to address the prejudice question and to say, well, what would the California Court of Appeal have done had the And at that point, I guess we have to look at what the underlying Fourth Amendment law is, trying to figure out, well, of course, the California Court of Appeal would conscientiously have applied the Fourth Amendment. Actually, Your Honor, the standard would be whether, if the claim had been raised on direct appeal, whether there's a reasonable likelihood that the claim would have succeeded. That's correct. And in that regard, a look into the underlying Fourth Amendment law is necessary, but the ultimate issue is not the Fourth Amendment claim in and of itself. And this is, in fact, is a nice transition point to bring me to my second claim. The district court here ordered an unconditional writ, and it's our position that that order exceeded the boundaries of what was permissible here. Assuming that Mr. Brewster was, in fact, prejudiced, which we submit cannot be the case because the California courts have already addressed the merits of the claim, but assuming that the district court was right and that this was a Strickland violation on both prongs, the remedy would be to send it back for a new appeal. The undertaking that the district court did here in addressing the ultimate finding of a Fourth Amendment claim here is... Is there any basis for thinking that the California Court of Appeal at this late date would hear an appeal? I don't know, Your Honor. I see none. That is to say, the time for appeal has long since passed, and for us to order the California Court of Appeal to hear an appeal that's out of time, I don't know if we get to do that. They may. They may not. And if they don't, then a commensurate remedy would be ordered. They may. The point is that this Court's remedy is confined to that order. Let me ask you a different question. If there were prejudice, then what you're essentially what the court would be saying is that the California Court of Appeals would likely have reversed, right? If there was prejudice? Yeah. If this Court were to find prejudice, I'm not saying I agree with that. I'm saying if the Court were to find prejudice, that means, translation is, California Court of Appeals would likely have found that the motion to suppress should have been granted. Right. In that case, why isn't the appropriate remedy simply the normal one that we enter, which is to grant the writ conditionally upon the State's decision as to whether to pursue further proceedings? That would be a conditional writ. And the further proceedings would be to allow Mr. Brewster to undertake another appeal if he chose to. That's not what I said. Right. Or the State could simply opt not to. I don't understand how. Why would Brewster want another appeal? I mean, that's just a silly remedy. He doesn't want an appeal. He wants out. I believe he is out. Well, I know. And that's what he wants, is to be out. So why in the world would he pursue another appeal? That's silly, isn't it? If he wished to. . . You can't force him to pursue another appeal. Right. And if he. . . I don't understand why that accomplishes anything. As a practical matter, it may not. But our point is we are trying to guard against the infringement of what we believe is the province of the California courts to address. Well, I understand that. Did you. . . Am I speaking clearly? I may not be. I don't understand why the correct remedy, if there is prejudice, is not to say, look, he's out unless, within 90 days, the State desires to pursue further proceedings in the State trial court. I don't understand what those proceedings would be in this case. Well, I certainly can figure out several that I would do if I were the State, but never mind. But to allow him to withdraw the plea. . . Sure. There's a judgment in place. Well, let him out. I. . . Either any of those things, whatever. I do believe that. . . You could decide to try the case again. You probably wouldn't, but you could decide to try the case again without the evidence that was suppressed. You could decide to ask to withdraw the plea agreement, or you could just let it go. Well, but. . . Do you not want that? No, the matter is, is the State court should be afforded an opportunity to litigate this Fourth Amendment claim. Okay. To litigate the Fourth Amendment claim. Never mind. That's. . . I understand the point, but this is. . . The case that we saw in our brief, Mate v. Tate, addresses this, and it's not Stone v. Powell prohibits this Court from making a definitive determination whether there was, in fact, a Fourth Amendment violation here. If the California appellate court should have addressed that in the merits, they should be given an opportunity to do so. That just makes absolutely zero sense to me. Why in the world does Brewster want to pursue an appeal? He's out. He doesn't want to take the chance of losing in the California court of appeal. Right? Right. That's up to him. It's. . . And how can this Court, even regardless, assuming he had a 25-year sentence and he would have an incentive, why in the world, how can this Court act on him? We can act on the State, but how can we act on him? We can't order him to file a new appeal. We can't order the California court of appeal to entertain a new appeal. We're not sitting in direct review of the California court of appeal. It's none of our business whether it violated California law or not. We can't instruct it to do diddly squat, can we? The remedy would be to put him in the position that he would have been in, but for counsel's ineffective assistance. I have nothing further. Okay. Ms. McClintock. May it please the Court. Anne McClintock with the Federal Defender's Office on behalf of Mr. Brewster. I'd like to start with Judge Rimer's last comments regarding the prejudice analysis. And I think your question was if there exists prejudice, then we're saying the third district court of appeals, which is the intermediate appellate court, likely would have reversed the suppression decision. And I think that's exactly correct. The State is arguing that we have to provide, the Federal court has to provide the State courts an opportunity to review the merits of that and leave off deciding that question on the substantive level. And that's just plain wrong. The State had an opportunity to do it. It was through the ineffective assistance of appellate counsel that that opportunity without the ineffective assistance, they had an opportunity. And as Judge Fletcher pointed out, they made a mistake in their Wendy process. So. Well, see, I just find that to be as close as one can come to a red herring. How so? Well, you know, let's just forget Wendy. It doesn't really matter. Wendy is a real red herring. Let's suppose that trial counsel just plain didn't do anything, didn't file an appeal. We would be in exactly the same position as if he had not. And what the question that we would have on habeas is whether counsel was deficient. Answer? Yes. Absolutely. Second question is, did that cause prejudice? And on that question, the question is, is there a reasonable likelihood that the California Court of Appeal would have reversed the denial of the motion to suppress, right? Correct. All right. On that question and addressing that now, why is it that there's any prejudice? Because what the California trial court found was that the officer was reasonable in believing that both igloos belonged to Agnew, given the way it all went down. That Brewster, just let me finish, that Brewster got out of the car without picking up the igloo, that he stood by silently, and that Agnew said, sure, go ahead. All right? So the trial court found that the officer could reasonably believe that Agnew had apparent authority to okay the search, and that both igloos were his. Or the trial court said he could reasonably have believed otherwise and thought that the igloo, one of the igloos might have belonged to Brewster. Either way, his belief was reasonable. Now, what chance is there that the California Court of Appeal, or any court of appeal, on that scenario would say that's not reasonable? I would say that's a very high probability. Because what Illinois v. Rodriguez says is that when you have a warrantless lack of probable cause suppression, the burden is on the State to prove that the officer acted in an objectively reasonable manner in believing that he had actual authority or apparent authority over the closed container. I just told you what the California trial court found. And what you have omitted in, well, you've highlighted it, in the sense that the trial court found that it was equally likely that Officer Steinberg. No, I didn't say likely. It found it was reasonable for him to believe either that both igloos were Agnew's or reasonable to believe that one of the one of them could have been Brewster's.  Either way, the belief was reasonable. And that was the finding. But what the Illinois v. Rodriguez and the rest of the Supreme Court cases require is an officer in that position who could take either reasonable belief that he has an obligation under the circumstances of this case to inquire. Because what the trial court also found, and the testimony was undisputed from Mr. Agnew, that Mr. Agnew told the officers when he opened the driver's side passenger drawer, look, we're loggers. This is our stuff. We've got our equipment. It's not I've got my equipment in here. It's we have our equipment, our stuff in here. Officer Steinberg knew that. He goes around deliberately because of his concerns about officer's safety, not to that side where the driver's, you know, the presumption in the State's argument is the things closer to the driver's seat is the driver's. We're not talking about argument here. We're talking about a trial court that held a hearing and made fairly extensive, very discreet findings of fact. And that are supported in the record. His findings are fact. Well, let me back. Let me take it aside. On direct review in California under People v. Oldham, the factual findings of the trial court are subject to a substantial evidence review. It's not clear error. So I think there is a lot of testimony, for example, our equipment comments,  testimony from the other witnesses, from Mr. Brewster, from Mr. Agnew, from his son about the facts. And the trial court made a finding. It chose to whom to believe, and it made a finding. My point, though, is that under direct review under California law, those factual findings would not be subject to a clear error like we would do on direct review in Federal court. It would be substantial error. So it's not as clear that under direct review that those factual findings would be found supported by the court of appeals. But even if we do it under clear error, we accept what the superior court found, it is still imminently clear that the trial court ignored the obligation of putting the burden on the State to show that the officer acted objectively reasonable under those facts, because under those facts it shows that there are two men who have come back from work, there are two Igloos, it's our equipment in the van, and so the officer, an objectively reasonable officer, would have at least inquired is this your Igloo, or is, you know, made some additional question. Kagan. My authority would say that a reasonable officer would ask that question. He asked Agnew to search. Brewster is standing right there. He is not. I'm sorry. Go ahead. He's 5 feet away. He gets out. Agnew opens the trunk of the car. Brewster says nothing. Officer says can we search. He says sure. It's not as if, I mean, there's nothing, no law, no common sense suggests that somebody couldn't have two Igloos. One of them could have had Cokes in it or beer or whatever, and the other one could have had sandwiches. I mean, there's nothing like Welsh where a man says sure, go search the purse. The odds are kind of against his having apparent authority to open a purse. The problem with the positions you're taking, respectfully, is that Officer Steinberg did not say I thought both Igloos belonged to Agnew. He said I didn't think about it. I had permission. I just started searching. Yeah, but we're talking about now you're switching gears on me. You're talking about his subjective belief. We're talking about objective. But I think that reflects that an objective officer in a situation where he's faced with here are two possible scenarios. I've got two guys. You have to ask. My question is why should he think about it? Agnew, apparently, it's his truck. He's driving it for the employer. And for the employer, he's getting paid to drive an hour each way. And he says, you know, they're mine. Go ahead. Okay. Of course, he doesn't say they're mine. He says go ahead. He says go ahead. Yeah, I understand. But there's nothing about that scenario that causes a reasonable officer to say, oh, that doesn't make any sense. I think under the facts, I mean, the superior court's factual finding really focused on some of the disagreements between the testimony, whether the men were ordered to the back, whether they were handcuffed ahead of time. And it focused on that. But I think you have to review, and the state court of appeals on direct review would have looked at the entire testimony of the suppression hearing. And I think under those circumstances, a reasonable officer would have inquired or gotten some clarification from the men. And Steinberg did not do that. There are a couple. If I can interject for a moment, I agree with Judge Reimer that the superior court judge did his factual findings, and that's the end of it, as to what happened. So we take the narrative that the two men drive up in the truck. Agnew is the driver. He gets out. Brewster is the passenger. He gets out. They are both asked to step to the rear of the vehicle. Agnew is asked, do we have permission to look inside? He says yes. They open up the rear of the, I think it's a Suburban, look at the logging gear. Then with both men still standing at the rear, the officer goes in and opens up the igloo belonging to Brewster. I mean, those are the facts that are found. Absolutely. And so we've got to decide, okay, two levels of things. Number one, I guess we have to decide, was it a violation of the Fourth Amendment for the officer to have construed Agnew's permission as extending to both of the igloos? Correct. If we decide that it was a violation of the Fourth Amendment, and I say if, then we have to decide, would the California Court of Appeal have seen it that way? That is to say, the California Court of Appeal, even if we decide that it was a Fourth Amendment violation, the California Court of Appeal could have made a mistake. And if we think it's more likely than not that the California Court of Appeal would have made that mistake, calling it for the moment a mistake, I think we have to leave it alone. I don't agree with that last part, because I think with the... Well, but it seems to me, and maybe you can talk me out of this, which is why I'm asking it this way, I think our job is raw prediction. Now, prediction informed by our sense of the law, but our job is prediction. What would the California Court have done had the issue been properly presented to it? I think that's wrong, because it seems to import a kind of anti-terrorism act deference to the State Court of Appeals, where this is a... I don't see the anti-terrorism act involved here, I'm sorry to say. Let me try a couple more sentences, if I can make it clear. What Kimmelman says is that you can raise an ineffective assistance, whether it's appellate or trial counsel, that involves an underlying Fourth Amendment claim. An element of Kimmelman is you have to have a meritorious Fourth Amendment claim issue. So I think in deciding that question, that is purely a question of Federal constitutional law. So you, as a Federal court, I think can independently decide under the facts presented in the transcript whether there was a Fourth Amendment violation. Right. I'm with you so far. The rest of it, which we have some agreement... We have agreement with the Attorney General's over the ineffectiveness, the performance prong of the ineffective assistance of counsel claims. So we have that. And then the sole remaining question is, was he prejudiced? That's right. And I think the points that you have made regarding the Wendy process and the fact that the Wendy briefing did not go the way it should have, shows that Mr. Brewster was denied his direct appeal rights. But that comes back to the question that Judge Reimer hit on and then that you began with, and that is to say, okay, what would the California Court of Appeal likely have done had it been confronted directly with this argument? Right. But I don't think that the California Supreme Court or the Court of Appeals decision is going to be, if anything, it's going to be more deferential because it has some more play in what it's going to defer factually. Otherwise, the California Supreme Courts and the Court of Appeals decisions about the suppression issue is going to be identical to the one that you make. Well, no, I don't think so. That is to say, the question here, and I think there's fair room for argument, assuming the facts are as the California Superior Court judge found them, which I think the California Court of Appeal would have done, then the question is, as a matter of law, is this a violation of the Fourth Amendment? Okay. I don't think I have anything to add to it other than a procedural thing, which is to point out that in this case the Attorney General's Office of the Board has never argued that there wasn't a Fourth Amendment violation. Their focus has always been on the prejudice front. So actually, I don't think in the answer, in the objections, and even in their opening brief, they did not put at issue the merits of the suppression issue. Well, isn't that what the prejudice prong is about? No. Their argument was not the – Well, I know the argument they made. Right. The Strickland test, putting ourselves in a position of trying to answer that question, if we go past the first prong to the second, isn't the second prong, the prejudice, really the Fourth Amendment issue? I think it is, but I think my point is more of a procedural one. In the context of this specific case, the Attorney Generals have essentially conceded until the reply brief that there was a meritorious suppression issue. A meritorious issue doesn't – isn't the point. What they've conceded is that counsel was deficient in not raising the issue. They're not arguing that. That doesn't concede prejudice. But the pleadings that were presented to superior court alleged that he had a meritorious Fourth Amendment. The answer did not challenge that. The answer doesn't say anything about the Fourth Amendment was not violated. Oh, but that's – Their objections – We're talking Wendy brief stuff. What the State conceded was that he should have filed a real brief. Correct. That doesn't answer whether it would have made any difference. All right. So the question now is, assuming he had filed a real brief that fully argued everything you now argue, would the California court – is it reasonably likely that the California Court of Appeals would have bought the defense argument? I think given the discussion that's in the findings or recognitions that I'm adopting by the district court, that it is reasonably likely. I think this is a very strong – because of the burden of proof issue, which falls away in habeas review in State court, this – Would you spell out to me again? I just – I frankly don't understand your burden of proof issue. Okay. So would you say it for me again? What Illinois v. Rodriguez requires, and there are a variety of other cases after it, but it basically requires that in a warrantless search that lacks probable cause, so this situation, that an officer has to – the facts presented to the officer should have to be objectively reasonable to believe that the person who's giving consent has actual authority to give the consent. Yes. Okay. As the magistrate judge pointed out, in the facts of this case, even with the determination as set out by the trial court, the trial court never put that burden on the State because it found that we've got these – this scenario of two people, these people, common equipment in the van, he goes around to where Mr. Brewster is, there are two and he takes the one that is on the floor, on the passenger side presumably, although the record is not clear. It says center floor, but it's not the one on the console. And he just opens it. He doesn't ask any questions. The State, I would like to point out, there's a variety of factual characterizations in the State's reply brief that are just flat out wrong, that you should not rely on. For example, the State says, well, the officer didn't say, you know, that it wasn't  Well, there's no testimony about whether it was marked. The officer didn't say anything about it. They assumed that this thing that was searched was the one closest to the driver's seat. That's not what the record shows. It's at best on the floor, maybe closer to the passenger, but it's – they're both in the center. So you're – when you say they didn't – they put the burden of proof wrong, what you're really saying is the outcome was wrong. Oh, absolutely. But it's because the officer had an obligation under the Supreme Court precedent to ask under this situation that a reasonable officer would say, I got two guys, two sets – lots of equipment, two igloos, they just came off work, he's gotten out of the car. There's another factual point I want to make that is wrong in the appellant's brief, which is the assert that Steinberg saw Mr. Brewster get out of the van without the igloo. And that's not true. What Mr. Steinberg testified to is that he saw Brewster outside the van on the passenger side with the door open. There's no testimony about – my concern is the reply brief conveys the idea that Brewster's already removed his equipment, and Steinberg, on some level, understands that. And that's not what the record shows. Let me say this, if I can. It strikes me that anybody who has any sort of realistic understanding as to the likely situation of a couple of loggers coming home from a day's work with two igloos, anybody who thinks that the likely situation is that one of the two loggers has both of the lunchboxes and that the other one has no lunchbox is a nitwit. I would agree with that. Now, what do we do with that? My problem comes back, however, to we've gotten – that's not what the Superior Court judge relied on. What the Superior Court judge relied on was he was outside of the vehicle. He knew that there had been consent to the search. He said nothing, and that there's somehow a notion of implicit permission. Now, that implicit permission might or might not have been given. It might or might not be appropriate as a matter of law. But then I'm coming back to my question of – I'll call it just raw prediction. What's the Court of Appeal going to do with that? Because I don't think the Superior Court judge relied on the notion that it was very unlikely. I mean, which I find very, very unlikely. You don't have to hang around with a guy who's coming back from work very much to know that. Right. I think that is exactly what the trial court relied on. I cite to – it's in R. Appley's brief on page 16 in the quoted portion that I'd ask you to review that. But the third paragraph of the Superior Court judge's order doesn't rely on that. That's where he talks about, well, he's in the back of the van and the permission and so on. I think it does in that the trial court said it would be logical for Steinberg to assume one belonged to each or that they both – which could have prompted him to inquire, which is my point. Yeah, but then read on. But that didn't happen. But then read on. What's the Superior Court judge say after that? And then Steinberg admitted in his testimony that such was logical but added it didn't occur to him at the time and he just began searching. Yeah, yeah. Keep going. Well, that's where I end my quote. I'm sorry. Funny thing. Okay. Yeah, because it's the next paragraph that hurts. I shouldn't say it. That made it sound like it was a criticism of you not to include the next paragraph. No, I understand. But it's the next paragraph that's the hard one. Okay. But I think that that paragraph is really the focus of where Illinois v. Rodriguez was violated, where it was not followed. That's our position. There may be other rational explanations, but the real decision by the trial court was to focus on an officer could have thought this, he could have thought that, but he didn't make any decision. And he didn't make any inquiry. I think to the extent, and I only have about six seconds, but the extent that Judge Fletcher's question is suggesting that Brewster had an obligation to say, hey, don't search anything, I think that is, that to me is a red herring because a fair reading of the transcript shows that he was five to ten feet away. He's already engaged with the officer. He's already been told to get back there. And that he had no ---- He's already told the officer lies about, hey, there's nobody in the house. There's no parolee in the house. I mean, he's otherwise occupied. I'd like to ---- I know my time is up. There's one point that I want to make about the ability of being able to raise the suppression issue on habeas, if that's okay, because it was something I was not aware of, and so it's not in the briefs. I already briefed that the standards are different, and I think the arguments I'm not going to add anything to that. But I want to add that if you take a look at the superior court writ and the rest of the orders, and you actually look at the citations they give, In re. Walters, In re. Dixon, In re. Harris, and when you reread Harris, which I did last night, you discover that California has a Stone v. Powell rule that you cannot raise the substantive motion to suppression issues on habeas. On State habeas. On State habeas. So with that, I'd leave it. Thank you. Okay. Thank you, Mr. McClintock, for your argument. Mr. Johnson. Thank you, Your Honors. I'm going to sum up very briefly because I'm running out of time myself. The first thing I want to emphasize is that we have never conceded that there was a Fourth Amendment violation in this case. And as Judge Fletcher said, this isn't a claim of ineffective assistance of appellate counsel. And the question is, is it reasonably likely he would have prevailed had this issue been raised on direct appeal? And it is a prediction. It doesn't entail a prediction. Our point is that we have additional ammunition to make that prediction here. It's virtually certain that the answer is no. He would not have prevailed because the substance of this claim was addressed in collateral hearings before the State courts on State habeas, and it was rejected. Therefore, there is no reasonable likelihood that the result would have been different had this claim been raised on direct appeal. And that's the gravamen of our entire point here. And thank you very much, Your Honors. All right. Thank you, Mr. Johnson. Thank you both for your argument. And the matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton